UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

DARRELL SPRAGION,

               Petitioner,

  -against-

JOSEPH SMITH, Superintendent,

               Respondent.

-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-04-1880(FB)

FILED ORIGINAL
IN CLERKS OFFICE
JAN 0 4 2006
P.M. _____
TIME A.M. _____

*Appearances:*
*For the Plaintiff:*
DARRELL SPRAGION, *Pro Se*
99-A-4888
Shawgunk Correctional Facility
Post Office Box 700
Wallkill, New York 12589

*For the Defendant:*
CHARLES J. HYNES, Esq.
District Attorney, Kings County
By: SHULAMIT ROSENBLUM, Esq.
Assistant District Attorney
350 Jay Street, 20th Floor
Brooklyn, NY 11201

**BLOCK, District Judge:**

      Petitioner Darrell Spragion ("Spragion") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 following his conviction in New York Supreme Court, Kings County, on one count of murder in the second degree and one count of weapons possession. Spragion filed his original petition on May 3, 2004; on September 23, 2004, the Court granted Spragion leave to amend the petition. As amended, the petition claims that Spragion was (1) denied his constitutional right to a fair trial under the Sixth and Fourteenth Amendments by the trial court's failure to respond meaningfully to a juror's inquiry and by the trial court's delivery of a supplemental charge; (2) denied effective

1

assistance of trial counsel by counsel's failure to properly investigate or consult with Spragion regarding the viability of an alternative defense to the murder charge, and by counsel's failure to present "any meaningful adversarial challenge to the prosecution's case"; and (3) denied effective assistance of appellate counsel by counsel's failure to assert on appeal that (a) the trial court's reasonable doubt instruction was constitutionally defective, (b) trial counsel was ineffective for not raising an objection to that instruction, and (c) trial counsel was ineffective for failing to object to both the trial court's response to the jury inquiry and its delivery of the supplemental charge. Pet. for Writ of Habeas Corpus, Attach. at 2. Respondents do not dispute that Spragion's ineffective assistance claims were exhausted on the merits in various post-conviction proceedings in state court, and the Court therefore addresses, and denies, these claims on the merits. As explained below, *see* footnote six, Spragion's first claim thereby becomes academic; accordingly, Spragion's petition is denied.

I.

Spragion's conviction stems from the shooting death of Rodney Best ("Best") on November 1, 1988. According to evidence adduced at trial, on the date of the shooting Best and Darnell Spragion, Spragion's brother, became involved in a fistfight outside the apartment building where Spragion lived with his family. The fight was observed by Spragion, Best's sister, Yanique Best, her boyfriend, Douglas Peterson ("Peterson"), and another tenant in the building, Shekinah McCloud ("McCloud"). McCloud testified at trial that Spragion yelled at Best, "you are messing with my brother"; McCloud, Peterson, and Yanique Best testified that Spragion then approached Best and immediately shot him in the head at close range with a handgun. The medical examiner who performed Best's autopsy

2

testified that the gunshot wound was inflicted from a distance of between six inches to two feet away. According to McCloud's testimony, she called 911 about an hour after the shooting, identifying Spragion as the shooter. Spragion fled and was not arrested until he turned himself in to the police ten years after the shooting.

Following his arrest, Spragion was charged with one count each of intentional murder and depraved indifference murder, and one count of criminal possession of a weapon in the second degree. At trial, the defense strategy was to establish that Spragion had been falsely identified as the shooter by McCloud, Peterson, and Yanique Best, and that the prosecution had failed to carry its burden.[1] On cross-examination, defense counsel attempted to demonstrate that McCloud did not get along with Spragion's family, had inconsistent or incorrect recollections about the events surrounding the shooting, and had a romantic interest in Spragion which he rebuffed. During cross-examination of the officer who responded to the 911 call made by McCloud, counsel also elicited that the dispatcher had not given him Spragion's name as the suspected shooter.

On cross-examination of Yanique Best, she admitted that when she spoke with the police immediately after the shooting, and once again during the ten-year period when Spragion was missing, she gave the police information that was contrary to her present testimony. In this regard, she admitted that she did not initially tell the police that

---

[1]Although respondent did not submit an affidavit from trial counsel in opposition to Spragion's petition, the assistant district attorney who handled the State's opposition to Spragion's C.P.L. § 440.10 motion submitted an affidavit in that proceeding recounting a conversation with Spragion's trial counsel. During this conversation trial counsel informed the assistant district attorney that "defendant's position with him was that he did not do this shooting and that the defense at trial was conducted accordingly." Resp't's Opp'n to Pet. for Writ of Habeas Corpus, Ex. L at 14, ¶ 23.

3

she had seen Spragion shoot her brother; rather, she informed the authorities that she had not been present at the time of the shooting and did not know who was responsible. Counsel also elicited from Yanique Best that during the ten-year period following the shooting she never mentioned seeing the shooting or telling anyone that Spragion was involved.

On cross-examination of Peterson, counsel impeached Peterson with his past convictions for crack cocaine and weapons-related charges and his involvement in the drug trade, and attempted to elicit an admission that Peterson had been in a fight with Spragion during which he cut Spragion with a razor blade. Peterson also admitted that he had not initially told the police that Spragion shot Best; instead, he had informed them that, contrary to his testimony on direct examination, he was not present when the shooting occurred.

At the close of the prosecution's case, trial counsel moved for dismissal, arguing that there was no scientific or forensic evidence linking Spragion with the crime and that the witnesses who testified against Spragion were wholly unreliable; the trial court denied the motion. After conferring with Spragion, trial counsel informed the court that Spragion had elected not to testify or put on any evidence. During his summation, trial counsel attacked the credibility of the eyewitnesses and repeatedly emphasized that the prosecution had not fulfilled its burden of proving Spragion's guilt beyond a reasonable doubt.

In its charge to the jury, the court instructed the jury that its job was to "determine whether or not, based upon the credible evidence in this case, the defendant's guilt has been proven beyond a reasonable doubt," and that the testimony of one witness,

4

if believed "is sufficient to convict the defendant of the crimes . . . charged if you find that the People have proved all the elements through that one witness beyond a reasonable doubt." Tr. at 765, 771.[2] The trial court also noted that the law presumes the defendant to be innocent until "his guilt is proved beyond a reasonable doubt." Id. at 773. With respect to reasonable doubt, the trial court charged in relevant part:

> A reasonable doubt is an actual doubt that the jury is conscious of having after going over in their mind the entire evidence in the case, giving consideration to all the testimony and to each and every part thereof. In other words, if you feel firmly convinced of the defendant's guilt, then you have no reasonable doubt as to his guilt[]. If you are, on the other hand, feel uncertain and not fully convinced by the evidence that the defendant is guilty of the crimes charged, and if you believe you are acting in a reasonable manner, and if you likewise believe that any reasonable person in a matter of equal importance would hesitate to act in the course of such a doubt, the law says you have a reasonable doubt and the law commands that you [] give the benefit of the doubt to the defendant and you must acquit him. If you can say, I have a doubt and give a reason, even to yourself, that is based upon logic, experience, and common sense, the same that you would in deciding any important matter you would meet in your daily persona[] or business life, then that is a reasonable doubt.
>
> * * *
>
> The law requires that before you come to the conclusion as to the guilt of the defendant, you must be convinced of his guilt beyond a reasonable doubt, but not beyond all doubt. There are few things in life that are beyond all doubt, and the law does not impose that burden upon the prosecution. The burden, however, rests upon the prosecution to prove the defendant's guilt. The defendant is not obliged to prove his innocence. The rule of law in this regard is simply stated. The prosecution must prove beyond a reasonable doubt the guilt of the defendant as to each and every element of every crime that

---

[2]References to "Tr. ___" are to the transcript of the state court trial proceedings.

is submitted to you. If the burden is not fulfilled, you must *convict*. If the burden is fulfilled, you must *convict*.

\* \* \*

After carefully analyzing, and weighing and considering [the] evidence, defendant is entitled to every inference in his favor which can reasonabl[y] be drawn from the evidence. Where two inferences may be drawn from the evidence, one consistent with guilt, and one consistent with innocence, the defendant is entitled to the presumption of innocence. . . . Defendant, by his plea of not guilty to the indictment, has denied his guilt and every material issue is put before you by that denial, and it puts upon the prosecution, as I've already told you, the burden of proof of proving every essential fact necessary to establish defendant's guilt beyond a reasonable doubt before you can return a verdict.

Tr. at 774-779 (emphasis added). In its subsequent explanation of the elements of each crime charged, the trial court repeated that the prosecution had the burden of proving each element beyond a reasonable doubt. *See* Tr. at 780-786.

Finally, at the conclusion of its instructions the trial court directed the jury to

make very effort to harmonize [its] views and come to an agreement that would speak to the truth. Do not go into the jury room with a closed mind or refuse to listen to the opinions of your colleagues or refuse to discuss the evidence. You should always be open to reason and listen to the opinions of other jurors. I'm not telling you to surrender any conscientious opinion you have merely because you are outnumbered. However, you have a right, if you believe you are correct, to stick to your arguments and conclusions. All I am saying, that you should not make up your mind without at least listening to the arguments advanced by your fellow jurors . . . . Make every effort consistent with your conscience and with the evidence to harmonize your views with your colleagues.

Tr. 786-87.

6

During deliberations, juror number six sent a note to the court which stated, "I would like to know if I can vote undecided. I am not certain because I feel I was pressured." Tr. at 791. Defense counsel requested that the court simply answer the question in the affirmative. The court declined to do so, reasoning that the statement was unclear and could mean that the juror had not reached a decision regarding whether or not the prosecution had proved its case. *See* Tr. at 793-94. Counsel then approved the court's decision to (1) instruct the jury that each juror must vote either to acquit or to convict and (2) repeat its concluding remarks regarding the deliberative process.

Two hours later, juror number seven sent out a note which stated, "[t]he problem is juror number six, refuses to discuss the issues. She is not looking at us or answering us. She is not cooperating at all." Tr. at 801. The court expressed reluctance to give an *Allen* charge and defense counsel requested a mistrial; after further consultation with both sides, the court determined that it would give the jury an *Allen* charge and re-instruct it on the definition of reasonable doubt.[3] *See* Tr. at 800-01.

After the jury was recalled, the court repeated the substance of the note, to which juror number six responded, "[t]hat's not true." *Id.* at 801. The court then instructed the jury as follows:

> I want to give you just a reminder of what your duties and obligations are, and two, let me define to you what reasonable

[3]"The term 'Allen charge' is a generic term used for a type of supplemental instruction that is given to a deadlocked jury, first approved by the Supreme Court in *Allen v. United States*, [164 U.S. 429 (1986)]. A traditional *Allen* charge reminds the jurors about the importance of obtaining a verdict and encourages jurors to listen 'to each other's arguments' while also emphasizing that 'the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows.' *Id.* at 501." *Smalls v. Batista*, 191 F.3d 272, 275 n.1 (2d Cir. 1999).

doubt is. Maybe knowing that . . . can be a starting point for a discussion here. Now, in order to return a verdict, each juror must agree upon the verdict and the verdict must represent the considered judgment of each juror, and your verdict must be unanimous. It is your duty to consult with one another and to deliberate together with a view of reaching an agreement, if you can do so without violating your individual judgment. Each of you must decide the case for yourself, and do so only after an impartial consideration of all the evidence with your fellow jurors. During the course of your deliberation do not hesitate to re-examine your own views, and change your opinion if you are convinced by the discussion of the evidence. Do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. You are not partisans. You are judges, judges of the facts, and your sole interest is to ascertain the truth from the evidence in the case.

*Id.* at 801-02. The court then proceeded to re-instruct the jury on reasonable doubt.

After the supplemental charge was given, the jury returned a verdict convicting Spragion of intentional murder in the second degree and criminal possession of a weapon in the second degree.[4] At sentencing, trial counsel moved to set aside the verdict, arguing that the supplemental charge had been coercive, and that juror number six informed him after the trial that she had been pressured by the remainder of the jury and was "unable to assert herself in any way." Tr. of Sentencing Hearing at 7. The court denied the motion, finding that the circumstances did not suggest that the juror was placed under undue pressure, and disagreeing with defense counsel's contention that he had objected to the supplemental charge.

---

[4]Although it appears from the transcript that the verdict was reached some time later the same day, the time that elapsed between delivery of the supplemental charge and the verdict is unclear.

On appeal, Spragion, represented by new counsel, argued in relevant part that he was denied due process by the trial judge's failure to "meaningfully respond" to juror number six's question regarding whether she could vote undecided, and by the trial court's coercion of a verdict by delivery of the *Allen* charge. The Appellate Division affirmed the conviction, ruling that Spragion had failed to preserve this claim for appeal, but that it was without merit "in any event," because "the instructions were proper, addressed the jurors' concerns, and did not lower the prosecution's burden of proof." *People v. Spragion*, 288 A.D.2d 498, 498 (2d Dep't 2001). Leave to appeal to the Court of Appeals was denied. *See People v. Spragion*, 97 N.Y.2d 734 (2002).

Following a series of unsuccessful post-conviction proceedings in which Spragion's claims for ineffective assistance of trial and appellate counsel were raised and rejected on the merits, Spragion filed the present petition.

## II.

### A. Standards of Review

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a federal claim has been "adjudicated on the merits" by a state court, the state court's judgment is entitled to substantial deference. *See* 28 U.S.C. § 2254(d). "[A] state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (citations and quotations omitted).

For claims "adjudicated on the merits," *habeas* relief may not be granted unless the state court decision (1) was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if it unreasonably applies Supreme Court precedent to the particular facts of a case. *See id.* at 409. This inquiry requires a court to "ask whether the state court's application of clearly established federal law was objectively unreasonable," not whether the application was erroneous or incorrect. *Id.* In that respect, the standard to be applied "falls somewhere between merely erroneous and unreasonable to all reasonable jurists." *Wade v. Mantello*, 333 F.3d 51, 57 (2d Cir. 2003) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)). However, the "increment [of incorrectness beyond error] need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003) (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

**B. Spragion's Claims**

**1. Ineffective Assistance of Trial Counsel**

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms," and that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. In evaluating an ineffective assistance claim, the court "begin[s] . . . with the presumption that counsel was effective. [The court] then turn[s] to the challenged conduct . . . and look[s] for legitimate justifications for that conduct, including justifications transparent on the record and justifications offered by counsel." *Greiner v. Wells*, 417 F.3d 305, 320 (2d Cir. 2005). Based on the Court's review of the trial record, the Court concludes that the state court's analysis was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### a. Failure to Investigate

Trial counsel's decision not to investigate the report that Spragion had informed an unidentified individual that Best's shooting was accidental was not unreasonable. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any effectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. The record reveals that trial counsel pursued a defense strategy of mistaken identity, arguing that Spragion was not involved in the shooting and that the eyewitnesses who testified against him were unreliable or had motives to falsely identify him. Trial counsel's failure to search out the individual who repeated Spragion's assertion that the shooting was accidental was not unreasonable given that any testimony counsel might have procured from this individual, even if it were admissible, would have been incompatible and inconsistent with a defense of mistaken identity, and it was not unreasonable for counsel to decline to focus his time and efforts on investigations not

11

calculated to uncover evidence that would support the defense presented at trial.

Furthermore, trial counsel's decision to pursue a defense of mistaken identity, rather than attempt to convince the jury that the shooting was accidental, was not unreasonable. "We will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a 'significant potential downside.' Thus, [a] lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision." *Greiner,* 417 F.3d at 319 (citations and quotation marks omitted). While a mistaken identity defense allowed the jury to return a verdict of not guilty on all counts, an assertion that the shooting was accidental would not have provided a defense to the weapons charge; moreover, given that the statement contained in the report was that Spragion hit Best in the back of the head with a loaded gun but did so without meaning to kill him, there was a danger that the jury could conclude that Spragion's actions were taken in reckless disregard for Best's safety and that Spragion had committed depraved indifference murder.[5] Furthermore, the statement made by Spragion to the unidentified individual that was contained in the detective's report would likely have been excluded as hearsay. A strategic decision to pursue an accident defense would therefore almost certainly have required Spragion to testify, subjecting him to the dangers inherent in cross-examination. Finally, the assertion that Spragion hit Bend with the gun which then accidentally discharged was contrary to the testimony of two of the three eyewitnesses to the shooting,

---

[5]Under New York Penal Law § 125.25 (2), a person commits murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

12

who testified that they saw Spragion raise the gun, aim it, and shoot Best from a short distance, as well as by the testimony of the medical examiner, who opined that the bullet which killed Best was fired from a gun held at a distance of six to twenty-four inches. Spragion's trial counsel had a reasonable justification for choosing not to pursue an accident defense.

### b. Failure to Consult

Spragion's claim that his trial counsel was ineffective for failing to consult with him is without merit. "'While the amount of consultation required will depend on the facts of each case, the consultation should be sufficient to determine all legally relevant information known to the defendant.' . . . When counsel's failure to consult with a criminal defendant materially hampers the fashioning of a defense, counsel may be deemed to have functioned below the constitutional standard." *Jelinek v. Costello*, 247 F. Supp. 2d 212, 273 (E.D.N.Y. 2003) (citing *United States v. Tucker*, 716 F.2d 576, 581 (9th Cir. 1983); *Lindstadt v. Keane*, 239 F.3d 191, 200 (2d Cir. 2001)). Spragion asserts that his attorney's failure to consult with him "materially hampered and completely negated, any possible defense that the shooting was an unintentional act," and that "[s]tatements made to [the detective] by an unknown individual, advising the police that the shooting was an accident, coupled with the petitioner's version of the crime would have provided counsel with a plausible defense." Mem. of Law in Supp. of Pet. for Writ of Habeas Corpus at 46-47. It is somewhat unclear whether Spragion claims that his counsel failed to consult with him at all during the course of the representation, or whether he asserts that trial counsel merely failed to consult with him about the possibility of raising an accident defense. It is unnecessary for the Court to decide whether either failure was unreasonable, because even assuming that

trial counsel never met or consulted with Spragion during the course of his representation, and that this failure fell below the objective standard of reasonableness, Spragion cannot demonstrate that counsel's assistance was ineffective because he has not established that he was consequently prejudiced. *See Strickland*, 466 U.S. at 697 ("there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one)."

In that regard, apart from Spragion's own assertion that the shooting was an accident, Spragion does not identify any evidence relevant to this defense which might have been revealed had trial counsel consulted with him. Spragion does not present any facts to suggest that the self-serving hearsay statement made to an unidentified individual and recorded in the detective's report would have been admissible at trial; therefore, this defense would have required Spragion to testify and submit to cross-examination, with its attendant dangers. Furthermore, in light of the overwhelming evidence at trial that the shooting was intentional, including the testimony of two eyewitnesses who contradicted the version of events Spragion now urges, there is not a reasonable probability that the outcome of the trial would have been different even if Spragion's hearsay statement had been admitted and Spragion would have been willing to testify that the shooting was accidental.

Finally, Spragion's claim that trial counsel was ineffective in failing to "present any meaningful adversarial challenge to the prosecution's case," Pet. for Writ of Habeas Corpus at 41, is without merit. The record reveals that in pursuing the defense that Spragion had been falsely identified and that the prosecution had not sustained its burden

14

of proof, trial counsel forcefully articulated the weaknesses in the prosecution's case and vigorously cross-examined the prosecution's witnesses. Spragion fails to point to any evidence or testimony that trial counsel neglected to present at trial in support of this defense; as previously discussed, an accident defense would have been inconsistent with the defense of mistaken identity, and trial counsel therefore acted reasonably in declining to present any evidence relevant to that theory.

## 2. Ineffective Assistance of Appellate Counsel

### a. Failure to Assert Trial Counsel's Ineffectiveness for not Objecting to Delivery of *Allen* Charge and to Trial Court's Response to Juror Inquiry

Spragion's claim that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness with respect to the trial court's communications to the jury and its supplemental charge is without merit. "The failure to include a meritless argument [on appeal] does not fall outside the wide range of professionally competent assistance to which [a defendant] is entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). Thus, if trial counsel's failure to object to the trial court's response to the juror inquiry or its delivery of the supplemental charge was "not outside the range of reasonably competent assistance, appellate counsel cannot be faulted for failing to argue ineffective assistance of trial counsel." *Larrea v. Bennett*, 368 F.3d 179, 183 (2d Cir. 2004). The Court concludes that neither the trial court's response to juror number six's question regarding whether she could vote undecided nor the delivery of the supplemental charge denied Spragion of his right to a fair trial, and that trial counsel was therefore not ineffective in failing to preserve these issues for appellate review.

"A jury charge in a state trial is normally a matter of state law and is not

reviewable on federal habeas corpus absent a showing that the alleged errors were so serious as to deprive defendant of a federal constitutional right." *Grey v. Henderson*, 788 F. Supp. 683, 693 (E.D.N.Y. 1991) (citing *United states ex rel. Smith v. Montanye*, 505 F.2d 1355, 1359 (2d Cir. 1974)). "When reviewing jury instructions, 'it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir. 1999) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "The question is whether 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Grey*, 788 F. Supp. at 693 (citing *Cupp*, 414 U.S. at 147).

"A supplemental jury charge, when used to encourage a verdict in the face of a deadlock, has been sanctioned by the Supreme Court, this Court and all other courts of appeals." *Smalls*, 191 F.3d at 278. The Supreme Court has instructed that in determining whether a jury was improperly coerced by a supplemental charge requires a court to "consider the . . . charge given by the trial court 'in its context and under all the circumstances.'" *Lowenfield v. Phelps*, 484 U.S. 231, 236 (1988). Applying this rule, the Second Circuit has held that in the habeas context "[c]oercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt" and has "validated the use of an *Allen*-type charge when the charge is given by the court in an evenhanded, noncoerecive manner that it would prefer a unanimous verdict if accomplished without any juror yielding a conscientious conviction which he or she may have." *Smalls*, 191 F.3d at 279 (citations and quotation marks omitted).

Considering the supplemental charge "in its context and under all the circumstances," the Court concludes that it was not improperly coercive. The charge did not seek to convince the minority juror to change her views; instead, it encouraged the jurors to consult with and listen to one another in an attempt to reach a unanimous verdict, but only if such a verdict could be reached without any of the jurors surrendering their conscientiously held views. Because the charge encouraged the jury to continue to deliberate in the hopes of reaching agreement, but also advised the jurors "not surrender [their] honest convictions as to the weight or effect of the evidence solely because of the opinion of [their] fellow jurors or for the mere purpose of returning a verdict," the charge did not have a coercive effect on the verdict.

Spragion argues that the supplemental instruction was rendered unconstitutionally coercive because the implication of the two jury notes was that juror number six was impeding an otherwise unanimous verdict; that the judge communicated his awareness of the jury's division by repeating the substance of the second jury note prior to delivering the supplemental charge, and that the holdout juror would therefore have interpreted the instruction to be directed at her. In the context of exercising its supervisory powers over lower federal courts the Supreme Court has held that an inquiry by the trial court regarding the extent of a jury's division constitutes *per se* reversible error, *see Brasfield v. United States*, 272 U.S. 448 (1926); however, every court of appeals to have considered the issue has held that *Brasfield's per se* rule is not constitutional and does not apply in the *habeas* context. *See Montoya v. Scott*, 65 F.3d 405, 412 (5th Cir. 1995) (collecting cases). Furthermore, the Second Circuit has held that even on direct review, the fact that the judge has been informed without inquiry that there is a lone dissenter on the jury does not make

subsequent delivery of an *Allen* charge coercive. *See United States v. Crispo*, 306 F.3d 71, 77 (2d Cir. 2002) (holding that where court knew jury was deadlocked 11 to 1 and the holdout juror revealed her identity in court, "the fact that the judge knew that there was a lone dissenter does not make the charge coercive inasmuch as the nature of the deadlock was disclosed to the Court voluntarily and without solicitation" (citations and quotation marks omitted)). *See also United States v. Mejia*, 356 F.3d 470, 477 (2d Cir. 2004) (noting that "it is generally accepted that the mere fact that the jury made known its division to the court, without more, is not grounds for a mistrial or a bar to the court giving the *Allen* charge"); *United States v. Rao*, 394 F.2d 354, 356 (2d Cir. 1968) (reasoning that where jury volunteered the extent of their division but did not reveal whether the majority were for acquittal or conviction, judge's *Allen* charge "could not have been interpreted by the jury as indicating any preference for either side, the vice thought to inhere in the giving of an *Allen* charge after a question to the jury as to their division").

Here, even assuming that juror number six interpreted the judge's direction to continue to deliberate and listen to the opinions of her fellow jurors as directed solely at her, she was also aware of the trial court's instruction that she should not give up her honest convictions solely for the purpose of reaching a verdict. Furthermore, while the judge revealed that he was aware of the likelihood that juror number six was preventing a unanimous verdict, he was not aware of the nature of the jury's division, and his supplemental charge therefore could not be interpreted as expressing approval for one outcome over the other.

Finally, the trial court's response to the juror's question whether she could vote "undecided" was not unresponsive; rather, the trial court correctly instructed the jury

18

that it could not decline to make a decision regarding whether or not the prosecution had proved its case beyond a reasonable doubt. Nor has Spragion demonstrated that this response violated any constitutional right guaranteed by the Fourteenth Amendment. Because trial counsel's failure to object to the supplemental charge or to the trial court's response to the juror inquiry did not amount to ineffective assistance, it follows that appellate counsel's failure to assert that trial counsel was ineffective on this ground was also not defective.

**b. Reasonable Doubt Instruction**

The Court also concludes that appellate counsel was not ineffective for failing to challenge the trial court's reasonable doubt instruction, or for failing to assert that trial counsel was ineffective in not objecting to the instruction. "[W]hen a trial court attempts to explain 'reasonable doubt' for a jury, reviewing courts must scrutinize the instructions to ensure that the defendant was not judged by a lesser standard than 'proof beyond a reasonable doubt.'" *Chalmers v. Mitchell*, 73 F.3d 1262, 1266-67 (2d Cir. 1996). However, when a reviewing court examines a claim that a jury charge is erroneous, it must "review the jury instructions as a whole. '[A] challenged portion of the jury instructions 'may not be judged in artificial isolation,' but rather must be judged as the jury understood it, as part of the whole instruction, and indeed as part of all the proceedings that were observed by the jury.'" *Smalls*, 191 F.3d at 277. "In attempting to determine what standard [of proof] the jury actually applied, we cannot focus exclusively on a few erroneous words in the jury instruction and then reverse the conviction unless it is 'reasonably likely' that the jury applied the erroneous standard described or implied by those few words." *Chalmers*, 73 F.3d at 1267 (citing *United States v. Park*, 421 U.S. 658, 674 (1975)).

Spragion rails against the obviously inadvertent and mistaken instruction that if the prosecution had not fulfilled its burden of proof, the jury must "convict"; however, this language was immediately followed by the court's instruction that if the prosecution *had* fulfilled its burden, it must convict. Considering the charge as a whole, including the extensive explanations given to the jury about the nature of reasonable doubt and the prosecution's burden to prove each element of the crimes charged before Spragion could be found guilty, this error would have been understood by a reasonable jury as a misstatement, and it is therefore not "reasonably likely" that the jury applied the erroneous standard. *Id.* at 1267.[6]

---

[6]In respect to Spragion's first claim – that the trial court's response to the juror's inquiry and its delivery of the supplemental charge violated his due process rights – respondents argue that the claim was raised on direct appeal and rejected by the Appellate Division as unpreserved, and that because the state court denied the claim on an independent and adequate state ground, *habeas* review is therefore barred. The Court has necessarily reached the substance of this claim in addressing Spragion's claim for ineffective assistance of appellate counsel. Because the Court has concluded that appellate counsel was not ineffective given that the supplemental instructions and the court's response were not constitutionally deficient, Spragion's claim that he was denied a fair trial by these errors is academic, and the Court does not address whether the claim would otherwise be procedurally barred.

### III.

Spragion's § 2254 petition, as amended, is denied. Because Spragion has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, NY
December 23, 2005